IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

**JORDAN LEVANWAY AND**
**ADAM LEVANWAY,**
**INDIVIDUALLY AND ON BEHALF OF**       **CASE NO: 2:22-cv-00417**
**THEIR MINOR CHILDREN,**
██████████ **AND**
██████████,                            **SECTION:**

     **Plaintiffs,**

                              **JUDGE:**

**vs.**

**JAGUAR LAND ROVER NORTH**                **MAG. JUDGE:**
**AMERICA, LLC; JAGUAR LAND**
**ROVER LIMITED**

     **Defendants,**

## COMPLAINT

Plaintiffs, Jordan Levanway and Adam Levanway, individually and on behalf of their minor children, ██████████ and ██████████, by and through counsel, state their causes of action against Defendants, Jaguar Land Rover North America, LLC and Jaguar Land Rover Limited as follows:

## PARTIES

1.     Plaintiffs Jordan Levanway and Adam Levanway are of the full age and majority, and are citizens and residents of Jefferson Parish, Louisiana, residing at 3600 Neyrey Drive, Metairie, LA 70002.

2.     Plaintiffs Jordan Levanway and Adam Levanway, a married couple, are the parents and natural tutors of their minor children, ██████████ and ██████████.

1

3.      Defendant Jaguar Land Rover North America, LLC is a Delaware corporation with a principal place of business at 100 Jaguar Land Rover Way, Mahwah, NJ 07495. Jaguar Land Rover North America, LLC transacts business in the State of Louisiana and the Eastern District of Louisiana, and may be served through its registered agent for service of process, Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

4.      Upon information and belief, Jaguar Land Rover North America, LLC is a wholly owned subsidiary of Jaguar Land Rover Limited. Upon further information and belief, Jaguar Land Rover North America, LLC is, and at all times relevant to this action was, in the business of designing, manufacturing, testing, marketing, and distributing vehicles including the 2020 Land Rover Discovery, VIN SALRU2RV5L2422191 (hereinafter the "Subject Vehicle") that included various product defects described below and which has caused injuries to Plaintiffs.

5.      Defendant Jaguar Land Rover Limited is a limited company located in the United Kingdom at Abbey Road Whitley Coventry, CV3 4LF United Kingdom. Jaguar Land Rover Limited does business, itself, or through its subsidiaries and affiliates, in the State of Louisiana and the Eastern District of Louisiana. Jaguar Land Rover Limited is, on information and belief, the entity that designed, manufactured and shipped the vehicle which injured Plaintiffs to the United States, State of Louisiana and Eastern District of Louisiana.

6.      Upon information and belief, Jaguar Land Rover North America, LLC and Jaguar Land Rover Limited, (collectively "Jaguar Land Rover" or "Defendants" or "Defendant Jaguar Land Rover") are in the business of designing, testing, manufacturing, marketing, servicing, and supplying automobiles within the United States.

2362287.2

**JURISDICTION AND VENUE**

7.      The Court has diversity jurisdiction over this cause of action pursuant to 28 U.S.C.

Section 1332(a)(1) because the matter in controversy exceeds the sum of $75,000 and is between

citizens of different states.

8.      The Court has general and/or specific personal jurisdiction over Defendants

because Defendants maintain continuous and systematic contacts with the State of Louisiana.

Indeed, Defendants' products saturate the roads of Louisiana. Defendants' operations in Louisiana

are so substantial and are of such a nature that they are sufficient to render Defendants "at home"

in Louisiana. To that end, Defendants or their directly-affiliated entities solicit sales in Louisiana

and continuously hold themselves out as conducting business in Louisiana through advertisements.

Defendants' continuous and systematic activities in Louisiana also include: constantly operating

numerous dealerships in Louisiana; directly importing, marketing, and selling thousands of

products to the citizens of Louisiana annually; advertising its automobiles and other products,

including the safety features of those products, to the citizens of Louisiana on a daily basis;

maintaining those products for the citizens of Louisiana; realizing millions of dollars in annual

sales in Louisiana; maintaining (since 1987) a registration with the Louisiana Secretary of State

and identifying a principal place of business in this State; and maintaining registered agents for

service of process in Louisiana. More specifically, Defendants operate a Land Rover dealership in

Jefferson Parish from which Plaintiff Adam Levanway leased the Subject Vehicle relevant to this

action.

9.      Whether personal jurisdiction is based upon a general or specific jurisdictional

theory, Defendants are not being haled into court as the result of random or fortuitous conduct, or

as the result of the unilateral activity of any other person or third person. Rather, Defendants are

3

2362287.2

being brought into court in the State of Louisiana as a direct result of their efforts to avail themselves of the benefits and privileges of conducting business in the State of Louisiana, where the Subject Vehicle foreseeably caused injury as a proximate result of the defects in said vehicle.

10.     Under either a general or specific jurisdictional theory, the exercise of personal jurisdiction over Defendants within the State of Louisiana does not offend traditional notions of fair play and substantial justice or any other requirement of due process.

11.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) as a substantial part of the events or omission giving rise to the claims brought herein occurred in this judicial district.

### GENERAL ALLEGATIONS

12.     On February 1, 2020, Plaintiff Adam Levanway entered into a Lease Agreement with Land Rover New Orleans, leasing the Subject Vehicle, a 2020 Land Rover Discovery, manufactured by Defendants for the use of his wife, Plaintiff Jordan Levanway. The Subject Vehicle was new at that time.

13.     Upon information and belief, the Subject Vehicle and/or its components possessed one or more defects in design, manufacture, or otherwise, which were either known or should have been known by Defendants. The defect(s) substantially caused Plaintiffs' injuries as more fully described herein.

14.     The design and/or manufacture of the Subject Vehicle—as well as other similar vehicles manufactured, designed and/or sold by Defendants—was defective in that it contained an electronic gear selector that has an unfamiliar movement that is not intuitive and that provides poor tactile and visual feedback to drivers, increasing the potential for unintended gear selection and vehicle rollaway (the "Defective Gear Selector").

2362287.2

15.     Drivers could exit the Subject Vehicle—as well as other similar vehicles manufactured, designed and/or sold by Defendants—when the engine is running and the transmission is not in PARK, resulting in unintended vehicle rollaway.

16.     Further, the Subject Vehicle—as well as other similar vehicles manufactured, designed and/or sold by Defendants—failed to include sufficient rollaway prevention features as well as sufficient warning features and/or measures so as to prevent drivers from exiting these vehicles with the engine running and the transmission not in PARK and/or to avoid vehicle rollaway.

17.     Plaintiffs are further informed and believe that the design and/or manufacture of the Subject Vehicle—as well as other similar vehicles manufactured, designed and/or sold by Defendants—was defective in that it lacked safety features (which are standard in many other vehicles, including those manufactured by Defendants) to automatically move the vehicle's transmission into PARK when the driver's door is opened, the seatbelt disengaged and the driver exits the vehicle.

18.     At the time the Subject Vehicle was manufactured, or at least by February 21, 2021, Defendants were aware of dozens of complaints of rollaways, crashes and other incidents attributable to the defects alleged herein. Nevertheless, Defendants continued to recklessly install the Defective Gear Selector and exclude the safety features required to prevent vehicle rollaways and injuries when the driver's door was opened, the seatbelt disengaged and the transmission was not placed in PARK.

19.     Despite their actual knowledge of the defective design and/or manufacture of the Subject Vehicle and Defective Gear Selector, Defendants failed to timely and/or adequately

5

remedy the defective Subject Vehicle and/or Defective Gear Selector and sold the defective Subject Vehicle.

20.     On February 21, 2021, Plaintiff Jordan Levanway, 36-weeks pregnant, was preparing to take her then 3-year-old son, ██████████, to the local pet store. ████'s car seat was not installed in the Subject Vehicle as it was recently returned from the Jaguar Land Rover dealership following an unrelated recall repair.

21.     Jordan wanted to move the Subject Vehicle from the front to the end of the driveway to give her husband, Adam Levanway, more room to install the car seat and load their son into the vehicle.  Adam held ████ on his hip at the end of the driveway waiting for Jordan to move the Subject Vehicle.

22.     Jordan started the Subject Vehicle, depressed the brake pedal and turned the Defective Gear Selector to the REVERSE position. Before removing her foot from the brake pedal, the backup camera alerted her to something near the rear passenger tire. Jordan immediately put the Subject Vehicle back into the PARK position and/or into what she and any other reasonable consumer would reasonably believe to be the PARK position so she could investigate what was triggering the backup camera warning. Jordan slowly began to exit the vehicle, turning her body to place her feet on the ground, when the Subject Vehicle spontaneously began rolling backwards just as she was stepping out of the driver's side door.

23.     Jordan attempted to hang on the driver's side door to protect herself and her unborn child, but was unable. The force of the Subject Vehicle moving down the driveway knocked Jordan down, rolled over her, dragged her body down the driveway on the side of the Levanway home causing severe injuries to Jordan Levanway and her then unborn son, ██████████.

6

24.     Plaintiffs Adam Levanway and ▮▮▮▮▮▮▮▮ observed the above-described vehicle movements and Plaintiff Jordan Levanway being dragged and run over by the Subject Vehicle. Adam chased the vehicle down their driveway into the street and to the neighbor's yard across-the-street, slammed on the brake pedal and turned the engine off. As a result of the foregoing injuries to his wife, Jordan Levanway, and the probability of significant injuries to his unborn son, ▮▮▮▮▮▮▮▮, Plaintiff Adam Levanway suffered serious mental anguish and emotional distress from the observance of the above-described action of the Subject Vehicle which was severe, debilitating and foreseeable to a reasonable manufacturer of motor vehicles. ▮▮▮ ▮▮▮▮▮ likewise suffered serious mental anguish and emotional distress, including nightmares and extreme fear of the Subject Vehicle and similar looking vehicles, from the observance of the above-described injuries to his mother.

25.     Because of Jordan Levanway and her unborn son's life-threatening injuries, she was rushed via ambulance to University Medical Center, a Level 1 trauma center.  Jordan and her unborn son's conditions rapidly declined upon arrival and an emergency cesarean section was performed to deliver her son, ▮▮▮▮▮▮▮, four-weeks early, and further exploratory surgery was done to explore the abdomen to save Jordan's life. Immediately after ▮▮▮'s delivery at University Medical Center, he was transferred and admitted to the Neonatal Intensive Care Unit at Children's Hospital.

26.     Prior to the incident at issue in this case, Defendants sent a "Special Service Message" to all of its dealers acknowledging that the Defective Gear Selector "has erratic or intermittent operation." Outrageously, this information was not shared with the general public, and Plaintiffs received no warning of the defect.

7

2362287.2

27.     Further, prior to the incident at issue in this case, officers and/or managing agents of Defendants sent internal emails summarizing at least 28 customer-reported incidents of rollaways caused by the Defective Gear Selector in vehicles manufactured by Defendants. This information was not shared with the general public, including Plaintiffs.

28.     Concealing this information unreasonably subjected vehicle operators like Plaintiff Jordan Levanway and/or occupants to injury and death in the event of foreseeable motor vehicle use and misuse.

29.     As a consequence of Defendants' defective design, manufacture and construction of the Subject Vehicle, and its failure to warn Jordan and Adam Levanway of the defects in design, manufacture and construction, Plaintiffs Jordan Levanway and ▮▮▮▮▮▮▮▮ each individually suffered severe, debilitating and permanent injuries from the crash, which injuries otherwise would not have been incurred or would have been significantly reduced.

30.     Specifically, the lack of anti-rollaway feature in the Subject Vehicle, including but not limited to the Defective Gear Selector, along with other components of the vehicle, were defectively manufactured, designed and constructed so that Plaintiff Jordan Levanway suffered severe, debilitating and permanent injuries to her body, which damages would not have occurred had the vehicle not been defectively manufactured, designed and constructed. Moreover, Plaintiffs were provided with no warning of the defective manufacture, design and construction of the vehicle and, had they been provided with such notice, would not have leased or driven the Subject Vehicle.

31.     At the time the Subject Vehicle left Defendants' control, there existed an alternative design for the vehicle which would have prevented Plaintiffs' injuries. Further, the likelihood that the Subject Vehicle's design would cause the Plaintiffs' damages and the gravity of those damages

2362287.2

far outweighed the burden on Defendants of adopting such alternative design and the adverse effect of such alternative design on the utility of the product.

## DAMAGES

32.     As a result of Defendants' conduct, Jordan Levanway has suffered serious and permanent injuries, both in the past and in the future, including, physical pain and suffering, mental anguish, disfigurement, physical impairment, lost earning capacity, past and future medical expenses, and other damages which will be proven at the trial of this matter. Jordan did not know and could not have known of the defects in the Subject Vehicle.

33.     As a result of Defendants' conduct, ▮▮▮▮▮▮▮▮ has suffered serious and permanent injuries, which have resulted in damages to him both in the past and in the future, including, physical pain and suffering, mental anguish, past and future medical expenses, and other damages which will be proven at the trial of this matter.

34.     As a result of having observed his wife, Jordan Levanway, be struck and run over by the Subject Vehicle which caused severe injuries to his wife, plaintiff Adam Levanway suffered severe mental anguish and emotional distress which was debilitating and foreseeable.

35.     As a result of having observed the severe injuries to his mother, plaintiff ▮▮▮ ▮▮▮▮ suffers with severe mental anguish and emotional distress which is debilitating and foreseeable, including nightmares and extreme fear of the Subject Vehicle and similar looking vehicles.

36.     As a direct and proximate cause of Plaintiff Jordan Levanway's injuries, Plaintiff Adam Levanway has suffered loss of consortium, services and support with his wife for which the Defendants are liable.

37.     As a direct and proximate cause of Plaintiff Jordan Levanway's injuries, both minor

children ███████████ and ███████████ have suffered loss of consortium and physical and

emotional support with their mother for which the Defendants are liable.

**PRODUCTS LIABILITY: UNREASONABLY DANGEROUS IN CONSTRUCTION
AND COMPOSITION, UNREASONABLY DANGEROUS IN DESIGN
AND FAILURE TO WARN
L.A. R.S. 9:2800.55-.57**

38.     Plaintiffs allege and incorporate the allegations contained in the foregoing

paragraphs.

39.     Defendants designed, engineered, manufactured, tested, assembled, marketed,

advertised, inspected, maintained, sold, distributed and constructed the Subject Vehicle.

40.     Defendants designed, engineered, manufactured, tested, assembled, marketed,

advertised, inspected, maintained, sold, distributed, constructed the Subject Vehicle and placed the

Subject Vehicle on the market and in the stream of commerce which was unreasonably dangerous

to the consumer, knowing that the product would reach and did reach the ultimate consumer

without substantial change in the defective condition it was in on the date it left Defendants'

control.

41.     Defendants knew or should have known that the ultimate users or consumers of this

product would not, and could not, inspect the vehicle so as to discover the non-obvious defects

hidden from the consumers' eye as described herein. The Subject Vehicle, including the Defective

Gear Selector was defective when it left the control of Defendants and remained in the same

condition until the time of the incident.

42.     Defendants knew or should have known of the substantial dangers involved in the

reasonably foreseeable use of the Subject Vehicle, whose defective manufacture, design,

10

construction and lack of warnings allowed the Subject Vehicle to cause and/or exacerbate Plaintiffs' injuries.

43.    Plaintiff Jordan Levanway was a reasonably foreseeable user of the Subject Vehicle.

44.    The Subject Vehicle was, at the time of Plaintiffs' injuries, being used in the manner intended by Defendants, and in a manner that was reasonably foreseeable by Defendants involving a substantial danger not readily apparent if adequate warning of the dangers were not given.

45.    At the time that the Subject Vehicle was manufactured by Defendants, the vehicle contained manufacturing defects which rendered the vehicle unreasonably dangerous and, on information and belief, the Subject Vehicle was not made in accordance with Defendants' specifications or performance standards.

46.    In addition, the Subject Vehicle was defective in construction or composition in that, when it left the hands of Defendants, it deviated in a material way from Defendants' specifications or performance standards for the product or from otherwise identical products manufactured by Defendants.

47.    The Subject Vehicle was also unreasonably dangerous in design in that, at the time the vehicle left Defendants' control, there existed alternative designs for the vehicle that were capable of preventing Plaintiffs' damages. For example, Defendants could have incorporated a software feature to automatically apply the Emergency Parking Brake ("EPB") immediately when the driver door is opened and the seatbelt is unbuckled. Defendants could have also incorporated a software feature to automatically return the transmission to the PARK position when the driver door is opened and the seatbelt is disengaged.

2362287.2

48.     Alternative designs to correct the Subject Vehicle are not only feasible, but were utilized at the time the Subject Vehicle was designed and manufactured and continues to be utilized by Defendants and its competitors in other vehicles, and the adoption of an alternative design would have had no effect on the Subject Vehicle's overall utility. The adoption of technically feasible and available alternative designs and/or issue recalls and/or consumer warnings could have been timely done and can still be done by the Defendants.

49.     No true burden would be put on Defendants in order to adopt alternative designs or issue recalls or consumer warnings since safety is of paramount concern for every vehicle and since related costs are all reasonable in light of the Subject Vehicle's unreasonably dangerous propensity to cause serious permanent personal injuries and death.

50.     Plaintiffs' injuries are the legal and proximate result of Defendants' manufacturing defects, Defendants' failure to adopt a reasonably feasible alternative design to eliminate the defects in the vehicle and/or Defendants' failure to provide adequate warnings of the risks of substantial harm associated with the foreseeable use of the subject vehicle.

51.     Plaintiffs are, therefore, entitled to recover damages from Defendants in an amount to be proven at the trial of this matter.

## DEMAND FOR JURY TRIAL

52.     Plaintiffs are entitled to and request a trial by jury on all counts alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Jordan Levanway and Adam Levanway, individually and on behalf of their minor children, ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮, pray that Defendants be cited to appear and answer herein, that this cause be set for trial before a jury, and that a judgment issue in favor of the Plaintiffs and against Defendants, Jaguar Land Rover North America and Jaguar

2362287.2

Land Rover Limited, for their damages in such amount as the evidence may show and the jury

may determine to be proper, together with pre-judgment interest, post-judgment interest, costs of

suit, and such other and further relief to which they may show themselves to be justly entitled.


Dated: February 17, 2022                    Respectfully submitted,


                                            /s/ Dawn M. Barrios
                                            DAWN M. BARRIOS (#2821)
                                            EMMA KINGSDORF SCHWAB (#35864)
                                            BARRIOS, KINGSDORF & CASTEIX, L.L.P.
                                            701 Poydras Street, Suite 3650
                                            New Orleans, LA  70139-3650
                                            Telephone: (504) 524-3300
                                            Facsimile: (504) 524-3313
                                            barrios@bkc-law.com
                                            eschwab@bkc-law.com

                                            FABRICE VINCENT
                                            LIEFF, CABRASER, HEIMANN &
                                            BERNSTEIN, L.L.P.
                                            Embarcadero Center West
                                            275 Battery Street, Suite 3000
                                            San Francisco, CA  94111-3339
                                            Telephone: (415) 956-1000
                                            Facsimile: (415) 956-1008
                                            fvincent@lchb.com

                                            FRANK J. D'AMICO, SR. (#4478)
                                            FRANK J. D'AMICO
                                            A PROFESSIONAL LAW CORPORATION
                                            500 Pontchartrain Drive
                                            Slidell, LA 70458
                                            Telephone: (985) 645-0088
                                            Facsimile: (985) 645-0034
                                            fdamico@frankdamicolaw.com

2362287.2